**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| ANTOINNETTEIA KNIGHT, | * | |
| Plaintiff, | * | |
|  | * | |
| v. | * | Civil No. 24-1938-BAH |
| CITIFINANCIAL, INC., ET AL., | * | |
| Defendants. | * | |
|  | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Antoinnetteia Knight ("Plaintiff") filed the above-captioned complaint *pro se* together with a motion for leave to proceed in forma pauperis, ECF 2, which shall be granted. Plaintiff brings suit against "Citifinancial, Inc now [k]nown as OneMain Financial Services" ("CitiFinancial"), Resources Real Estate Services, LLC, "Nationstar aka Mr. Cooper Mortgage and Mortgage Services" ("Nationstar"), "William Wertman and the Firm of Kristine D. Brown [Associates -In Fact]" (brackets in original), "First Franklin c/o Security Connection &  Citi Group,"[1] Lifestyle Realty Management, LLC, Golden Trust & Escrow, LLC, Jessica LaPrade, Fidelity National Title Insurance Company, and "Baltimore Municipal and City of Baltimore & Maryland Bureau of Revenue Collections."  ECF 1, at 1.

Section 1915(e)(2)(B) of 28 U.S.C. requires this Court to conduct an initial screening of this complaint and dismissal of any complaint that (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is

---

[1] Plaintiff appears to have intentionally listed this defendant as a single entity: "First Franklin c/o Security Connections & Citi Group is a Loan Company in this Complaint Matter."  ECF 1, at 18 ¶ 32.

immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Lomax v. Ortiz-Marquez,* 140 S. Ct. 1721, 1723 (2020). The Court is mindful of its obligation to construe liberally a complaint filed by a self-represented litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented"). Here, Plaintiff's complaint fails to state a claim upon which relief can be granted. She will be directed to show cause why the complaint should not be dismissed.

The Court takes judicial notice of *Knight v. Nationstar Mortg., LLC*, Civ. No. SAG-23-3502, 2024 WL 3046408 (D. Md. June 18, 2024) ("*Knight II*"), which concerned the mortgage on Plaintiff's late husband's property—1642 Northwick Road, Baltimore, MD 21218, which is the same property at issue in this case (herein after "the subject property"). In *Knight II*, Plaintiff brought suit against Nationstar for "(1) violation of the Fair Debt Collection Practices Act[;] (2) unfair practices related to omission and misrepresentation; (3) violation of the Garn-St. Germain Depository Institutions Act of 1982; (4) deceptive foreclosure; and (5) breach of the implied warranty of good faith and fair dealing." *Id.* at *1 (citations omitted). Judge Gallagher granted Nationstar's motion to dismiss, finding that Plaintiff's claims were barred by the statute of limitations and a foreclosure action pending in the "Circuit Court for Baltimore City, Case No. 24-O-17-000519, . . . which was affirmed on appeal in" *Knight v. Brown*, No. 1916, 2019 WL 1220819 (Md. App. Mar. 14, 2019) ("*Knight I*"). *See Knight II*, 2024 WL 3046408, at *1, *4. Judge Gallagher dismissed *Knight II* on June 18, 2024, and the instant case was filed on July 3, 2024. *See* ECF 1.

The facts underlying this case and *Knight II* overlap significantly, though Plaintiff has named additional defendants in this suit.[2]  Here, Plaintiff alleges that her late husband purchased the subject property in 1987, financing the mortgage through Loyola Federal Savings and Loan Association ("Loyola").  ECF 1, at 5 ¶ 2.  The mortgage was first acquired by Crestar Bank, when Crestar Bank acquired Loyola in 1995, and then by SunTrust Bank when SunTrust Bank acquired Crestar Bank in 1998.  *Id.* at 6 ¶¶ 5–6.  Plaintiff alleges that her husband paid off the initial loan and obtained several other loans between 2001 and 2007.  *Id.* at 6–8 ¶¶ 7–9.  A 2007 loan obtained through CitiFinancial was sold to Nationstar in 2013.  *Id.* ¶¶ 8–10.  Plaintiff alleges that a 2001 loan with CitiFinancial "should have been in Maryland [d]eed and [r]ecorded" in the amount of $10,488.40, but instead, CitiFinancial "filed a fake deed of trust [i]n the amount of $73,813.81 that was borrowed and had a final due date of August 5, 2031."  ECF 1, at 21 ¶ 42 (capitalization and

---

[2] Judge Gallagher summarized the *Knight II* facts as follows:

> Plaintiff's now-deceased husband purchased a home in 1987. He refinanced the property with Countrywide in 2007, but Countrywide sold the mortgage to Bank of America. Nationstar acquired the mortgage servicing rights on June 4, 2013. Plaintiff's husband did not receive any paperwork from Nationstar at the time of the transfer.

> Plaintiff's husband died on February 6, 2014. A few weeks later, a Nationstar representative came to Plaintiff's home asking her to vacate the property. About two weeks later, Plaintiff received a notice of eviction and appeared in state court for a landlord-tenant hearing. Plaintiff remained in her home, but in the beginning of 2015, Nationstar told Plaintiff that all future payments had to be by money order. In October, 2015, Nationstar advised that it was invoking the due-on-sale clause in the loan agreement. Through September, 2016, Plaintiff paid all monthly mortgage loan payments on time by money order. Nationstar notified Plaintiff in November, 2016 that monthly payments would no longer be accepted since she was not a party to the loan. On March 21, 2017, Nationstar's substitute trustees filed a foreclosure action in the Circuit Court for Baltimore City. Nationstar sold the property at a foreclosure auction on July 6, 2017.

*Knight II*, 2024 WL 3046408, at *1 (citations omitted).

emphasis omitted). She appears to allege that the 2005 loan made with CitiFinancial was also fraudulently recorded with incorrect loan amounts, *id.* at 22 ¶ 43, and that three deeds of trust were recorded in 2007 (two with USA Home Loans Inc., and one with CitiFinancial), *id.* ¶ 45.

Plaintiff alleges that after her husband died in 2014, the loan payments were current and "proper written notice [was] sent to [Nationstar] notifying them of [his] death." *Id.* at 8 ¶ 12. "From July 2013 through November 2016 full monthly Loan payments of $1,148.40 were sent to [Nationstar] . . . ." *Id.* ¶ 11(a). Then, between November 2016 and March 2017, Nationstar "intentionally refused to accept any further [l]oan payments." *Id.* at 9 ¶ 14. Plaintiff alleges that CitiFinancial and Nationstar and others "conspired to conceal their illegal activities" and "stag[ed] a fake [f]oreclosure" on the property on December 20, 2019. *Id.* at 9 ¶ 15.

Plaintiff appears to allege that Baltimore City has violated the Equal Protection Clause of the Fourteenth Amendment by "not remedying discriminatory home for[e]closures and [not] remedy[ing] . . . disparities in real estate land and deed racial covenants barriers as obligated to do so" (count I). ECF 1, at 31 (capitalization removed). She alleges that "[f]ederal law requires Baltimore Property Tax Department to establish procedures and maintain adequate staff to investigate complaints of violations" and that "Baltimore [h]asn't put any [r]ules, [p]olicies or [o]rdinances in [p]lace to remedy infringement on Plaintiff['s] [c]onstitutional [r]ights as of 2024." *Id.* at 29–30. Plaintiff also brings the following claims against unspecified defendants: "conspiracy against rights" (count II); "deprivation of . . . rights under color of laws" (count III); "defamation of character, bad faith, theft by deception, exploitation of elderly and disabled" (count IV); "false claims" (count V); "consumer protection procedures act arising from violations of the Maryland real estate laws" (count VI); fraud and activity in connection with identification documents authentication features and information" (count VII); and "denied Civil Rights Act 1866 and Civil

Rights Act of 1871 by abuse of powers by those in authorities" (count VIII). *Id.* at 31–33. Plaintiff also cites to 42 U.S.C. § 1981, 42 U.S.C. § 1983, 18 U.S.C. § 242, 18 U.S.C. § 1623, 15 U.S.C. §§ 41–58, and 18 U.S.C. § 1028. *Id.* at 20–21.

Plaintiff has not stated a claim upon which the Court can grant relief. First, the complaint contains no facts about private defendants Resources Real Estate Services, LLC, First Franklin c/o Security Connection & Citi Group, Golden Trust & Escrow, LLC, Jessica LaPrade, or Fidelity National Title Insurance Co. *See generally* ECF 1. The allegations as to William Wertman and the firm of Kristine D. Brown and Lifestyle Realty Management, LLC are minimal. William Wertman and the firm of Kristine D. Brown are listed as trustees on one loan. *See* ECF 1, at 23 ¶ 45(b). Lifestyle Realty Management, LLC, appears to have acquired the subject property after the foreclosure. *See* ECF 1, at 25 ¶ 47(v) (noting that in "2018 Lifestyle Realty Management, LLC [is] recorded in State Records [as] having [p]aid Plaintiff . . . a total of $70, 500 for the Purchase of [the subject property]" but that "Plaintiff ha[s] no [k]nowledge of this [c]ompany [n]or [did she] receive any money from anyone for" the property). Because the facts (or lack thereof) pertaining to these defendants are insufficient to sustain a cause of action, these defendants must be dismissed.

Second, to the extent Plaintiff seeks redress for any alleged wrongdoing by Nationstar stemming from the foreclosure sale of the subject property, Judge Gallagher has already held those claims to be time-barred. *See Knight II*, 2024 WL 3046408, at *3 ("Thus, any lawsuit contesting any of Nationstar's actions leading up to or culminating in the foreclosure of Plaintiff's home would have had to be filed by, at the latest, 2020. Plaintiff did not file the instant action until late December, 2023, more than six years after the foreclosure. Unfortunately, then, all of her claims are clearly time-barred."). Judge Gallagher further held that "[e]ven had Plaintiff's claims been filed timely, however, they would largely be barred by *res judicata*" because she "had a full and

fair opportunity to litigate the foreclosure-related issues during her appeal of the state court foreclosure proceeding in 2019 [*Knight I*]." *Id.* at *4. These claims against Nationstar are now doubly barred by res judicata, and Plaintiff is precluded from bringing the claims asserted in the complaint against Nationstar.[3]

The same statute of limitations analysis in Judge Gallagher's June 18 order applies to the state claims raised in this suit.[4] Even assuming the complaint states a claim against Nationstar and CitiFinancial, the most recent date of alleged wrongdoing in the complaint is December 2019. *See* ECF 1, at 9 ¶ 15 ("December 20, 2019 CitiFinancial Servicing and Nationstar aka Mr. Cooper in direct complicity - and other (Associated-Fact-Fact) conspired to conceal their illegal activities - as relevant to Plaintiff and Husband Real Estate & {HOME}-by means of staging a fake Foreclosure on 1642 Northwick RD., Baltimore, MD . 21218 . . . ." (sic)); *id.* at 10–11 ¶ 15(c) ("December 21 , 2019 Plaintiff observed from car that was made to sleep in- men entering 1642 Northwick Rd. then began to remove Plaintiff and Husband personal and household items from our home then TRASH items into their private dumpster bins." (sic)). Maryland's general statute

---

[3] While res judicata is typically an affirmative defense to be raised by a party, in certain circumstances and taking into consideration interests of judicial economy, the Court may raise it on its own initiative. *See Arizona v. California*, 530 U.S. 392, 412 (2000) ("[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte,* even though the defense has not been raised." (citation omitted))); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) ("[T]he affirmative defense of res judicata—which serves not only 'the defendant's interest in avoiding the burden of twice defending a suit,' but also the important judicial interest in avoiding resolution of an issue that the court has already decided—may, in 'special circumstances,' be raised *sua sponte*." (quoting *Arizona*, 530 U.S. at 412–13)).

[4] While the statute of limitations is also an affirmative defense that generally must be raised by a party, the Fourth Circuit and other circuit courts have found a district court's *sua sponte* consideration the statute of limitations appropriate where a plaintiff is proceeding in forma pauperis (because of the district court's duty to screen such complaints under 28 U.S.C. § 1915) and the propriety of the statute of limitations defense is apparent from the face of the complaint. *See Eriline Co. S.A.*, 440 F.3d at 655 (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)).

of limitations for civil actions is three years.  Md. Code Ann., Cts. & Jud. Proc. § 5-101.  As such, any state law claims should have been brought by December 2022 at the latest.  Because Plaintiff filed this suit in July 2024, her state law claims are untimely filed.[5]

That leaves Plaintiff's federal claims, including her federal constitutional claims.  First, to the extent Plaintiff seeks to bring any action under Title 18 of the United States Code, criminal statutes generally do not "give rise to civil liability or authorize a private right of action." *Capps v. Long*, No. 20-6789, 2021 WL 4843568, at *2 (4th Cir. Oct. 18, 2021); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994).  Nor can Plaintiff state a cause of action under 15 U.S.C. §§ 41–58, the Federal Trade Commission Act.  "[T]here is no private right of action under the Federal Trade Commission Act."  *Kantor v. Pompeo*, 400 F. Supp. 3d 464, 470 (E.D. Va. 2019) (citing *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 675 (4th Cir. 1986); *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 987 (D.C. Cir. 1973)).

Second, to the extent Plaintiff seeks to hold any of the private defendants liable for denial of her civil rights purportedly committed "under color of law," Plaintiff has not alleged facts sufficient to establish that any private defendant's action can constitute state action.  "It has been

---

[5] Having reviewed Plaintiff's complaint, the Court also agrees with Judge Gallagher that Plaintiff has not met the heightened pleading standard under Fed. R. Civ. P. 9(b) for the claims sounding in fraud.  *Knight II*, 2024 WL 3046408, at *3 n.1 ("To the extent Plaintiff intends to assert claims sounding in fraud, she would have to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) in order to do so. Rule 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake.  Fed. R. Civ. P. 9(b). Particularity includes alleging the time, place, nature, and speaker of any alleged misrepresentation. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). That level of detail is absent from Plaintiff's Complaint. But the fraud claims, in any event, would also be subject to a three-year statute of limitations.").  Beyond bald and conclusory assertions of "[f]ake and forged documents of eviction," ECF 1, at 9 ¶ 15(a), Plaintiff has not provided any more details about these documents or their allegedly fraudulent nature.

observed that 'merely private conduct, no matter how discriminatory or wrongful[,]' fails to qualify as state action." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009) (quoting *Mentavlos v. Anderson,* 249 F.3d 301, 301 (4th Cir. 2001)) (additional internal quotation marks and citation omitted). "[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009) (quoting *DeBauche v. Trani,* 191 F.3d 499, 507 (4th Cir. 1999)). There are no facts here from which the Court could conclude that any allegedly wrongful action on the part of the private defendants can be characterized as state action. Plaintiff has also failed to state a claim for civil conspiracy pursuant to 42 U.S.C. § 1985(3) or § 1981. To state such a claim, "plaintiffs must allege 'that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiffs'] deprivation of a constitutional right.'" *Pitts v. U.S. Hous. & Urb. Dev.*, No. 5:12-CV-72-D, 2013 WL 214693, at *5 (E.D.N.C. Jan. 18, 2013) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)), *aff'd sub nom. Pitts v. U.S. Dep't of Hous. & Urb. Dev.*, 546 F. App'x 118(4th Cir. 2013). "Conclusory allegations of a conspiracy do not demonstrate the 'meeting of the mind' element and therefore fail to state a claim." *Id.* (citing *Simmons v. Poe,* 47 F.3d 1370, 1377 (4th Cir. 1995)). Beyond failing to identify which of her constitutional right were violated, Plaintiff's conclusory allegations of a conspiracy do not rise to the level of a plausible claim for relief.

Plaintiff's constitutional claims against Baltimore City also fail. While section 1983 "'is not itself a source of substantive rights,' [it] provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). Nor has she

stated a standalone Fourteenth Amendment equal protection claim.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV and citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)).  "To state a Fourteenth Amendment equal protection claim, 'a plaintiff must first demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Balogh v. Virginia*, ___ F.4th ___, No. 23-1581, 2024 WL 4551724, at *8 (4th Cir. Oct. 23, 2024) (quoting *Sandlands C & D LLC v. County of Horry*, 737 F.3d 45, 55 (4th Cir. 2013)).  Plaintiff does not identify how she has been treated differently from similarly situated persons and does not identify any suspect classification to which she belongs.[6]  Because "there is no allegation [s]he has been deprived of anything to which [s]he is otherwise entitled on the basis of [her] race, religion, nationality, or other suspect classification," her equal protection claim fails.  *Luber v. Anne Arundel Cnty.*, Civ. No. JKB-14-001, 2014 WL 11955404, at *1 (D. Md. Jan. 14, 2014) (citing *City of Cleburne*, 473 U. S. at 439), *aff'd sub nom. Luber v. Anne Arundel Cnty., Md.*, 574 F. App'x 246 (4th Cir. 2014).

Plaintiff does not challenge any specific policy or law, citing only Baltimore's general "real estate laws," ECF 1, at 28 ¶ ix, and "[d]iscriminatory [t]ax [f]oreclosures and non alignment with Maryland [d]eed and [t]rust records," *id.* at 30 ¶ 48.  Plaintiff's theory of liability appears to rest on the premise that Baltimore City has a "continuing obligation under the Constitution to

---

[6] While the complaint discusses racial disparities in housing outcomes, Plaintiff does not identify her own race.

affirmatively further Baltimore [c]itizens' [r]ights." ECF 1, at 30. While perhaps a worthy endeavor, the law does not impose such a duty. "A state actor's conduct violates the Equal Protection Clause only insofar as it results from a discriminatory purpose." *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 348 F. Supp. 2d 398, 412 (D. Md. 2005) (citing *Washington v. Davis,* 426 U.S. 229 (1976); *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252 (1977)). Plaintiff's general citation to disparities in housing outcomes in Baltimore City based on race, while troubling, do not alone constitute a plausible claim for relief.

In addition to its "inherent authority" to dismiss "frivolous complaints," *Chong Su Yi v. Soc. Sec. Admin.*, 554 F. App'x 247, 248 (4th Cir. 2014), a court can also dismiss a complaint sua sponte for failure to state a claim, *Webb v. EPA*, 914 F.2d 1493 (Table) (4th Cir. 1990). However, "district courts may only exercise their authority to sua sponte dismiss inadequate complaints if the procedure employed is fair to the parties. Namely, the party whose complaint stands to be dismissed must be afforded notice and an opportunity to amend the complaint or otherwise respond." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 291 (4th Cir. 2021). The Court will therefore direct Plaintiff to show cause why the complaint should not be dismissed. Plaintiff is forewarned that failure to show cause will result in dismissal of the complaint without further warning.

Also pending is Plaintiff's "Motion to Compel Defendants [to] Cooperate [and] Respond To Complaint." ECF 7. This motion will be denied as premature as the defendants in this suit have not yet been served with process.

Accordingly, it is this 8th day of November, 2024, by the United States District Court for the District of Maryland, hereby ORDERED that:

    1.  Plaintiff's motion to proceed in forma pauperis, ECF 2, is GRANTED;

2.  Plaintiff is DIRECTED to SHOW CAUSE by December 2, 2024, why the complaint should not be dismissed;

3.  Plaintiff  IS FOREWARNED that failure to comply with this Order in the time specified will result in dismissal of this case without further notice;

4.  Plaintiff's "Motion to Compel Defendants [to] Cooperate [and] Respond To Complaint," ECF 7, is DENIED; and

5.  The Clerk SHALL PROVIDE a copy of this Order to Plaintiff.


_____/s/_____
Brendan A. Hurson
United States District Judge